IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                              18-CR-4172 JAP

FERNANDO TOPETE-MADRUENO,

       Defendant.

**OPPOSED MOTION TO SUPPRESS EVIDENCE**

**COMES NOW** Defendant Fernando Topete-Madrueno, by and through his legal counsel, Marshall Ray, and hereby submits this Opposed Motion to Suppress Evidence pursuant to Fed. R. Crim. P. 12(b)(3)(C). Specifically, Mr. Topete-Madrueno requests the suppression of all evidence obtained and derived from the illegal search of the mobile home where he was staying on November 28, 2018. In support of the Motion, Defendant sets forth the following:

**I.    INTRODUCTION.**

On November 28, 2018, agents from the Federal Bureau of Investigations ("FBI") executed a search warrant at 9000 Zuni SE Trailer D-23, Albuquerque, NM 87123 ("Zuni Southeast"). The FBI's search and seizure of items from the residence and the vehicles parked outside constituted an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution because: (i) The information upon which the agents relied to obtain the warrant was stale by the time of the execution of the warrant given that, by the time agents obtained the warrant, the individual staying at the residence who was observed engaging in illegal activity forming the factual basis for the warrant had

1

moved out; and (ii) the agents obtaining and those executing the warrant knew or had reason to know that resident whose activities justified the warrant was living at another location. Moreover, law enforcement lacked any evidence that the Ford Edge was being used for drug trafficking, as that vehicle was not a part of any of the controlled purchases and was not driven by the target of the investigation. Accordingly, there was no probable cause no search premises or vehicles at 9000 Zuni Southwest the vehicles thereon. In light of the illegal search and seizure, the Court must suppress all evidence obtained from 9000 Zuni Southeast and from the vehicles parked at that address. *See United States v. Leon*, 468 U.S. 897, 906 (1984).

## II. PROCEDURAL BACKGROUND.

The indictment alleges one count of possession, with intent to distribute, 50 grams and more of a mixture and substance containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), one count of possession, with intent to distribute Heroin, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(C), one count of possession, with intent to distribute Cocaine, in violation of 21 U.S.C. § 841 (a)(a) and (b)(1)(C), and one count of possession of a firearm in the furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Defendant's arraignment was held on December 27, 2018 and he is currently in custody.

## III. STATEMENT OF FACTS.

1. Since February 2018, the FBI has been investigating an alleged drug-trafficking organization, which the FBI refers to as the Samaniego-Villa Drug Trafficking Organization ("SVDTO"). *See* **Exhibit A** (Search Warrant for 9000 Zuni Southeast property).

2. The FBI's investigation into the SVDTO has included surveillance of several individuals, along with controlled purchases of controlled substances using confidential informants and undercover agents.

3. On July 31, 2018, as part of one such controlled buy, local and federal law enforcement established surveillance at 9000 Zuni Southeast. They observed two vehicles parked outside: A Ford Fusion and a Ford Edge. *See id*.

4. At approximately 1:15 on July 31, 2018, local and federal law enforcement observed Samuel Rodriguez-Velazquez (also known as Bladimir Angulo), an individual identified by the Government as an "associate and narcotics transporter" for Samaniego-Villa, leave the 9000 Zuni Southeast address in a black Ford Fusion. *Id*. With the aid of a a confidential human source, law enforcement agents conducted a controlled purchase of two bags of substances identified as methamphetamine and heroin. Those substances were transferred to the confidential human source by Mr. Angulo. *See id*. Field tests later confirmed that the net weights purchased from Angulo on July 31, 2018 were 79.1 grams of heroin and 28.8 grams of methamphetamine. *See id*.

5. On August 8, 2018, law enforcement agents carried out another controlled purchase. On that day, Mr. Angulo again delivered approximately 79 grams of heroin and 116 grams of methamphetamine to and undercover agent. During the second controlled purchase, Angulo was observed driving the Ford Fusion. *See id*.

6. Although law enforcement agents conducted regular surveillance of Mr. Angulo and the 9000 Zuni residence, no other drug transactions were observed after August 8, 2018. Moreover, sometime in November 2018, Angulo moved to a different residence and switched cars. *See id*.; **Exhibit B** (Report of Surveillance).

7. On November 15, 2018, agents were again carrying out surveillance at 9000 Zuni Southeast. They observed Mr. Angulo leave the premises in a red Pontiac sedan. Agents also conducted surveillance of Defendant Topete-Madrueno, including following him to a casino. No criminal activity was observed. Mr. Topete-Madrueno was observed driving a Ford Edge, visiting a casino and returning home. He was not observed trafficking in narcotics or associating with individuals who do. **Exhibit B**.

8. By the time they executed the search warrant at 9000 Zuni Southwest on November 28, 2018, upon information and belief, law enforcement agents had information that Angulo no longer lived on the premises. Indeed, they knew where Angulo had gone because they were regularly conducting surveillance on him, and they arrested him at that location on November 29, 2018. As discussed below, the last time agents observed Angulo at 9000 Zuni was on November 15, 2018.

9. Law enforcement agents had never observed Angulo driving or riding as a passenger in the black Ford Edge. Nor had the observed Mr. Angulo or Defendant Topete-Madrueno ride together, speak, or associate with one another in any way. The black Ford Edge is not registered to any individuals known to be engaged in narcotics trafficking.

10. Although Mr. Angulo no longer lived at 9000 Zuni Southwest, on November 28, 2018, agents executed the search warrant obtained on November 19, 2018. **Exhibits A & C** (FBI 302 reporting execution of warrant).

11. Agents arrived at approximately 8:30 a.m. to execute the warrant. Upon arriving, their reports alleges that they breached the door and that they recovered narcotics, a firearm, ammunition, and other items from various rooms of the mobile home and from the Ford Edge. **Exhibit C.**

12. The evidence seized pursuant to the execution of the search warrant on November 28, 2018 led to the above-listed narcotics and firearms charges against Defendant Topete-Madrueno.

**IV.     ARGUMENT.**

The Fourth Amendment protects individuals from "unreasonable searches and seizures," and requires that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. Absent specific "exigencies of the situation," a search warrant is required to search a person's home or person. *Mincey v. Arizona*, 437 U.S. 385, 393–94, 98 S. Ct. 2408, 2414, 57 L. Ed. 2d 290 (1978) (warrantless searches are allowed when "exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment"). A search warrant is invalid without probable cause. U.S. Const. amend IV. An officer's mere suspicion of criminal activity is not enough to support probable cause. *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). "Probable cause is 'a fair probability that contraband or evidence of a crime will be found in a particular place.' *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir.2001)

The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Leon*, 468 U.S. 897, 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1984)). "The traditional remedy" for violations of a defendant's Fourth Amendment right against unreasonable searches and

seizures "of course, is the exclusion of the evidence obtained as a result of the unlawful search." *United States v. Cardenas-Alatorre*, 485 F.3d 1111, 1114 (10th Cir. 2007). "'The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful' search or seizure." *United States v. Tolbert*, 2018 WL 3611053, at *4 (D.N.M. July 27, 2018) (citing *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)). The Tenth Circuit has identified three "non-exclusive considerations" that help guide an inquiry into probable cause: "(1) the reliability of the informer, (2) the timeliness of the informer's allegations, and (3) the nexus between the item to be seized and the place to be searched." United States v. Knox, 883 F.3d 1262, 1275 (2018) (citations omitted).

Under these standards, the search and seizure conducted at 9000 Zuni Southeast lacked probable and was therefore illegal. Law enforcement agents obtained a search warrant based on information they had gained surveilling Bladimir Angulo months before they executed the warrant. The warrant that the Magistrate Judge signed recited evidence of controlled narcotics purchases carried out with Angulo, a known drug trafficker, who resided at 9000 Zuni for a period of time. All of the evidence supporting the warrant referred to the trafficking activities of Mr. Angulo. By the time they executed the warrant, however, law enforcement agents had information that Angulo had already moved to another location. Because all of their evidence supporting probable cause for the warrant related to the activities of Angulo, the agents knew the information providing probable cause was no longer valid and the warrant therefore lacked probable cause. Moreover, at no time was there probable cause to permit a search of the Ford Edge because that vehicle was never observed as being in the possession or custody of Angulo, who was indisputably

the target of the investigation, nor was it observed as part of any illegal activity. There is no colorable argument that the search was consensual or could satisfy any of the warrant exceptions. Moreover, the good-faith exception does not apply.

**A. Agents Relied on Stale Information when They Applied for the Warrant on November 19, 2019 Given that Angulo had not been observed carrying out any drug transactions for Three Months Before the Search Warrant Was Obtained and Agents Had Knowledge that He had Moved to Another Location.**

"Probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Snow*, 919 F.2d 1458, 1459 (10th Cir. 1990). "Whether the information is too stale to establish probable cause depends on 'the nature of the criminal activity, the length of the activity, and the nature of the property to be seized.'" *Id*. (quoting *United States v. Shomo*, 786 F.2d 981, 983 (10th Cir.1986)).

In this case, the affidavit supporting the search warrant describes controlled purchases on July 31, 2018 and August 8, 2018. *See* **Exhibit A**. The last surveillance disclosed by the Government describes an instance, on November 15, 2018, in which Angulo was followed and seen visiting the home of an individual that agents allege engages in drug trafficking with Angulo. Nevertheless, no purchases were observed. Moreover, and more critically, shortly after that November 15, 2018 surveillance, and before the date of the execution of the search warrant, Angulo stop residing at 9000 Zuni Southeast. Moreover, upon information and belief, agents knew Angulo had begun residing elsewhere but decided to obtain and execute the warrant on 9000 Zuni anyway, despite a lack of any observable illegal activity by Defendant Topete-Madrueno. Having based probable cause for the warrant on the activities of Mr. Angulo and having observed Mr. Angulo begin

residing in another location, law enforcement knew or should have known that they did not have probable cause to continue targeting 9000 Zuni Southeast. They proceeded anyway. Their search and seizure of the premises under those circumstances was illegal and lacking in probable cause.

**B. No Probable Cause Was Established to Search the Ford Edge.**

Even if the above-described defects did not render the entire November 28, 2018 search warrant activities illegal, the officer still did not have probable cause to search the Ford Edge. The warrant affidavit is silent about whether Mr. Angulo and Defendant Topete-Madrueno have any relationship or contact with one another other than sharing a residence. The only surveillance of Defendant Topete-Madrueno involved observations of him driving the Ford Edge to a casino, playing slot machines, and returning to 9000 Zuni Southeast.

"'It is well-settled that for probable cause to exist there must be a nexus between the contraband to be seized or suspected criminal activity and the place to be searched.'" *United States v. Dutton*, 509 Fed. Appx. 815, 817 (10th Cir. 2013) (citing *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005)). "Courts will uphold a warrant if the issuing judge had a substantial basis for concluding that officers would find contraband during the search." *United States v. Wiggins*, 2018 WL 1773119, *3 (citing *Poolaw v. Marcantel*, 565 F.3d 721, 728-29 (10th Cir. 2009)). In the context of residential searches, the Tenth Circuit has explained that the appropriate nexus is established by "evidence linking the person's home to the suspected criminal activity." *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998). The affidavit in this case, of course, expressly identifies the Ford Fusion as the automobile involved in the controlled purchases. Agents

observed Mr. Angulo drive the Ford Fusion on both instances in which a controlled purchase occurred. In contrast, the information set forth in the affidavit (and known to officers) was that the Ford Edge was being driven by a person against whom there was no evidence of trafficking activity or association with Mr. Angulo or the Samaniego-Villa organization. The evidence available to agents, as set forth in the warrant affidavit, was that the Ford Edge was the car of Mr. Angulo's roommate and therefore outside the scope of any probable cause related to Mr. Angulo's activities. The search of that vehicle and the seizure of evidence from it was an overreach on the part of the Government.

### C. The Good Faith Exception Does Not Apply.

The good faith exception to the exclusionary rule allows "the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *U.S. v Leon*, 468 U.S. 897, 897 (emphasis added). The focus when determining whether the good-faith exception applies is "whether a 'reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005), (quoting Leon, 468 U.S. at 922 n. 23); *United States v. McKneely*, 6 F.3d 1447, 1454 (10th Cir. 1993).

Here, the critical question for determining good faith is whether the agents executing the warrant knew or had reason to know that Mr. Angulo had begun residing at another location by the time of the execution of the search warrant. The search warrant was obtained on November 19, 2018—four days after the last time Mr. Angulo was seen at 9000 Zuni Southeast (at least, according to the disclosures provided by the Government thus far). The good faith exception does not apply if, sometime between the issuance of

9

the warrant and the date of execution, the agents involved in the search and seizure learned that the basis for probable cause (i.e., the presence of Mr. Angulo) had relocated. Defendant Topete-Madrueno contends that the agents' continuous surveillance of Mr. Angulo suggests that those agents would have known that Mr. Angulo was residing elsewhere by November 28, 2018. The good faith exception therefore does not apply.

### D. The Exclusionary Rule Applies to All of the Evidence Seized from the Mobile Home and from the Ford Edge.

"The traditional remedy" for violations of a defendant's Fourth Amendment right against unreasonable searches and seizures "of course, is the exclusion of the evidence obtained as a result of the unlawful search." *United States v. Cardenas-Alatorre*, 485 F.3d at 1114. That remedy applies here, where all of the evidence seized pursuant to the Search Warrant Executed at 9000 Zuni Southeast was seized pursuant to an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution. With nothing to cure the constitutional defects in the subject search, all evidence seized must be excluded form the United States' case-in-chief.

### V. CONCLUSION.

The warrant obtained on November 19, 2018 and executed on November 28, 2018 was invalid because it lacked probable cause. Upon information and belief, agents had knowledge that, soon after November 15, 2018, Mr. Angulo, the target of their investigation, had relocated. Because all evidence supplying probable cause was based on Mr. Angulo's activities, the search and seizure of evidence conducted at 9000 Zuni Southeast violated the Fourth Amendment to the United States Constitution. Moreover, probable cause was never established to include the Ford Edge within the ambit of the search warrant because there was not a sufficient nexus between that vehicle and the

suspected illegal activity. Consequently, the exclusionary rule applies to all evidence seized on November 28, 2018 from 9000 Zuni Southeast, including from the Ford Edge.

WHEREFORE, Defendant Fernando Topete-Madrueno respectfully requests that the Court issue and order finding the November 28, 2018 search and seizure at 9000 Zuni Southeast illegal and suppressing all evidence obtained pursuant to that search.

Respectfully submitted,

/s/ *Marshall J. Ray*
Marshall J. Ray
201 12th St. NW
Albuquerque, NM 87102
(505) 312-7598

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was served as sealed to opposing counsel via the CM/ECF system on this 7th day of June 2019.

/s/ *electronically filed*
Marshall J. Ray